IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARVANA, LLC,<br><br>   Plaintiff,<br><br> v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>   Defendant. | Civil Action No. 1:23-cv-08616 (SHS)<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT [CORRECTED] FOR DECLARATORY JUDGMENT

Plaintiff Carvana, LLC ("Carvana") brings this action against Defendant International Business Machines Corporation ("IBM") seeking a declaratory judgment of non-infringement as to the following patents: U.S. Patent Nos. 7,072,849 (the "'849 patent"), 7,543,234 (the "'234 patent"), and 7,631,346 (the "'346 patent") (collectively, the "Asserted Patents"). For its Complaint, Carvana alleges as follows:

### NATURE OF THE ACTION

1. This is an action arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, seeking a declaratory judgment of non-infringement of the Asserted Patents and for such other relief as the Court deems just and proper.

### THE PARTIES

2. Carvana is an Arizona limited liability company, with its headquarters in Tempe, Arizona and with substantial business operations in New York, New York.

3. Founded in 2012, Carvana is a pioneer in online vehicle sales. Carvana provides the Country's leading e-commerce platform for buying and selling used vehicles. Customers can

find, tour, buy, and finance vehicles completely online. Carvana then delivers the vehicles straight to the customer's home or allows them to pick-up their vehicles at one of its 39 patented CARVANA vending machines.

4. On information and belief, IBM is a New York corporation having its principal place of business at 1 New Orchard Road, Armonk, New York 10504.

5. On information and belief, IBM is the assignee of the '849 patent, '234 patent, and '346 patent.

## JURISDICTION AND VENUE

6. This action arises under the Patent Laws of the United States, 35 U.S.C. §§ 1 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338(a). As discussed further below, an actual and justiciable controversy exists between Carvana and IBM as to Carvana's non-infringement of the Asserted Patents.

7. This Court has personal jurisdiction over IBM because, on information and belief, IBM is organized under the laws of New York, maintains its principal place of business in this jurisdiction, has purposely availed itself for relief in this jurisdiction and is at home in this jurisdiction.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and 1391(c).

9. Venue is particularly appropriate as this Court is very familiar with IBM's lead patent at issue in this case, the '849 patent.  The very claim construction and non-infringement positions here concerning the '849 patent previously arose in *Chewy, Inc. v. IBM*, No. 1:21-cv-1319 (S.D.N.Y.) (Rakoff, J.) ("*Chewy*").  As discussed further below, IBM has asserted the '849

patent against Carvana in relation to the same website functionality at issue in *Chewy*, seeking tens of millions of dollars against threats of imminent litigation. Carvana has responded that it has the same non-infringement defenses at issue in *Chewy*, and therefore the *Chewy* outcome would be dispositive of, or at least the same, as to the similar if not identical issues here. IBM has disregarded these points entirely.

10. In *Chewy*, Judge Jed S. Rakoff construed five terms from the '849 patent (*Chewy, Inc. v. IBM*, 571 F. Supp. 3d 133, 141-43 (S.D.N.Y 2021)) and granted Chewy's motion for summary judgment of non-infringement, rejecting IBM's '849 patent infringement arguments as to the accused *Chewy* website functionality. *Chewy, Inc. v. IBM*, 597 F. Supp. 3d 669 (S.D.N.Y. 2022). These '849 patent claim terms and infringement arguments in *Chewy* are remarkably similar to those IBM asserts against Carvana here. Given IBM is headquartered here and with this Court's close familiarity with the exact issues as to the lead patent in suit, this case is properly brought in this venue.

## THE ASSERTED PATENTS

11. The lead patent at issue, the '849 patent, is titled "Method for Presenting Advertising in an Interactive Service." The '849 patent issued on July 4, 2006, to named inventors Robert Filepp, Alexander W. Bidwell, Francis C. Young, Allan M. Wolf, Duane Tiemann, Mel Bellar, Robert D. Cohen, James A. Galambos, Kenneth H. Appleman, and Sam Meo. The face of the '849 patent states that the patent was initially assigned to IBM. A true and correct copy of the '849 patent is attached hereto as Exhibit A.

12. The '234 patent is titled "Stacking Portlets in Portal Pages." The '234 patent issued on June 2, 2009, to named inventors Fonda J. Daniels, David Bruce Kumhyr, and Paul

3

Franklin McMahan. The face of the '234 patent states that the patent was initially assigned to IBM. A true and correct copy of the '234 patent is attached hereto as Exhibit B.

13. The '346 patent is titled "Method and System for a Runtime User Account Creation Operation within a Single-Sign-On Process in a Federated Computing Environment." The '346 patent issued on December 8, 2009, to named inventors Heather Maria Hinton, Ivan Matthew Milman, Venkat Raghavan, and Shane Bradley Weeden. A true and correct copy of the '346 patent is attached hereto as Exhibit C.

## THE PARTIES' DISPUTE CONCERNING THE ASSERTED PATENTS

14. By way of background, IBM is no stranger to aggressive enforcement of patents of questionable value. It has engaged in a sustained pattern of accusing many well-known web-based companies of infringing the Asserted Patents and has demanded large sums of money for a license to avoid costly patent litigation. Many of those companies refused to take licenses and were ultimately sued by IBM. For example, since 2017, IBM has sued Expedia (2017), Airbnb (2020), Zillow (2020), Rakuten (2021), and Zynga (2022), and forced Chewy (2022) into litigation over patent infringement concerning at least one of the Asserted Patents. Carvana itself was designated a so-called "candidate for litigation" by IBM in February of 2022.

15. What follows is the tortured history of discussions between IBM and Carvana. The point of reciting these here is to provide context for the justiciable basis for this Complaint and the filing in this forum.

16. Throughout the discussions, Carvana explained to IBM how the negative results in IBM's recent litigation affected Carvana's willingness to pay exorbitant sums for a license to what would inevitably be either invalid or non-infringed patents. IBM refused to listen to reason.

17. Ultimately, Carvana does here what Chewy did before it, filing a complaint for declaratory judgment of non-infringement for each of the patents IBM asserts against it, including the lead '849 patent, rather than having IBM's constant threat of litigation hang over its head. *See Chewy* Compl. (D.I. 1) at ¶ 24.

18. IBM first knocked on Carvana's door for money in November/December 2020 when an IBM licensing professional vaguely suggested Carvana should consider acquiring some IBM patents through a "patent partnership" without directly identifying which patents among a portfolio of several thousand were purportedly practiced by Carvana.

19. For several months thereafter and throughout 2021, IBM took confusing and unusual positions, claiming Carvana should buy IBM's patents but refusing to provide any detail or rationale, stating the identification of the specific patents at issue would require an "infringement notice" that could lead to litigation. IBM demanded $35M for a portfolio-wide license in October 2021, which was preposterous based on the paltry facts presented. Without providing any additional factual basis or context for its demand, IBM sent a follow up letter to Carvana's in-house IP counsel on October 27, 2021 with the subject line "Notice of Infringement for IBM U.S. Patent Nos.: 7,072,849; 7,631,346; 6,778,193; and 7,543,234."

20. IBM asserted in the "Notice" that Carvana's website functionality infringed at least claim 1 of the '849 patent and claim 1 of the other referenced patents. The letter also insinuated that if the parties could not reach a "business resolution," IBM would sue Carvana for patent infringement, stating that IBM had been "forced" to resolve infringement of its patents through judicial proceedings in patent litigations against Amazon, Priceline, Expedia, Zillow, Airbnb and Groupon, among others. IBM's in-house counsel then turned the matter over to a

non-lawyer, a licensing official with IBM named Thomas McBride ("McBride"), who had a similar history of confronting Chewy before the *Chewy* litigation.

21.     The parties entered into an NDA in early 2022 and McBride was still suggesting Carvana "buy" IBM patents, which was ignored by Carvana.  On February 10, 2022, McBride sent a settlement offer for infringement of the '849 patent among others requesting an exorbitant sum against purported damages in the high-eight figure range as the minimum amount IBM would pursue based on its history of enforcing the '849 patent.  IBM also stated that the settlement offer was good until March 31, 2022, after which it expired.  Carvana did not accede to IBM's demand.

22.     In a separate email sent on the same day, McBride made clear IBM would not agree to license the patents that were allegedly being infringed by Carvana "since these patents are currently in litigation."  Nonetheless, IBM later flip-flopped and made offers including the "infringed" patents, and then demanded a cross-license to Carvana's valuable patent portfolio.

23.     McBride repeatedly touted IBM's past '849 patent victory against Groupon without mentioning the potential for IBM losing the then pending dispositive motion in *Chewy* (stating instead it was set for trial in the coming months).

24.     In the flurry of McBride's February 2022 communications, he closed by saying "[p]lease allow me to inform you that Carvana has now made the list of litigation candidates for 2022" and advising Carvana's in-house counsel that "hopefully" she will discuss this with the "Carvana Executive Team" to avoid surprise when IBM sues.

25.     Thus, Carvana was faced with the impossible choice of paying an exorbitant licensing fee for IBM's entire portfolio, the vast majority of which involved patents not relevant to Carvana's business and of little value, to put it mildly, with a cross-license to boot, or risk

expensive patent infringement litigation over questionable patents that were under attack in other cases.

26.     Carvana and its outside IP litigation counsel attempted to lead IBM to see reason. Counsel arranged a March 18, 2022 meeting with IBM officials (specifically requesting IBM's lawyers be present) to present detailed non-infringement and invalidity positions and to explain why Carvana should not be a "candidate" for litigation or be forced to pay exorbitant sums. At the meeting, Carvana's outside counsel presented a 50+ page PowerPoint deck explaining why Carvana did not infringe each of the Asserted Patents. Counsel specifically discussed the then-pending dispositive motion in *Chewy* as having direct bearing on the same alleged infringement issues with Carvana's accused website.[1]

27.     IBM apparently reviewed the material with its outside counsel and McBride responded to Carvana a month later, on April 28, 2022 (after issuance of the *Chewy* summary judgment order). McBride stated only that IBM continued to believe its "proofs" remained valid. IBM refuted nothing as to Carvana's presentation of the *Chewy* analysis and its disposition of the '849 patent claim as to Carvana, stating only "as for the decision in the *Chewy* matter, we do not agree with the Judge and will be appealing."

28.     Outside counsel for Carvana responded the same date indicating that the pending actions and adverse rulings on the Asserted Patents, and specifically the *Chewy* outcome, had significant impact on Carvana's (or any other company's) willingness to meet IBM's demands.

---

[1] By the time of this meeting, IBM's asserted '193 patent had been invalidated under Section 101 by an Article III court in *Zillow* (*See* Order on Def.'s Mot. to Dismiss (D.I. 66) at 20, *IBM v. Zillow Group Inc. et al*, No. 20-cv-1130-TSZ (W.D. Wash. Mar. 9, 2022)). Carvana demanded IBM withdraw '193 from assertion, which its in-house counsel said would be done, but McBride later re-asserted the patent, as discussed *infra*.

29. In fact, throughout 2022, each of the Asserted Patents (and the originally included '193 patent) suffered adverse rulings in various matters, evidencing significant issues existed with IBM's "proofs":

    a. On April 11, 2022, in *Chewy*, this Court granted Chewy's motion for summary judgment, declaring that Chewy did not infringe the asserted patent claims of the '849 patent, and dismissing IBM's claims for infringement of the '849 patent. *Chewy, Inc. v. IBM*, 597 F. Supp. 3d 669, 681 (S.D.N.Y. 2022) (Rakoff, J.), appeal pending, No. 22-1756 (Fed. Cir.). Judge Rakoff ruled Chewy did not infringe the asserted claims of the '849 patent, finding that "no reasonable factfinder could conclude that Chewy performs the 'selectively storing' element of asserted claims 1, 2, 14, and 18." *Id.*

    b. On October 25, 2022, the Patent Trial and Appeal Board ("PTAB") instituted an *inter partes* review proceeding as to each of the claims of the '346 patent as anticipated and/or obvious over the prior art. *See Ebates Performance Marketing, Inc. d/b/a Rakuten Rewards v. IBM*, IPR2022-00646 (PTAB Oct. 25, 2022) (Paper 10). A Final Written Decision is expected by October 25, 2023.

    c. On May 24, 2023, the PTAB issued a Final Written Decision ruling that claims 1, 3-6, 13, and 15-18 of the '234 patent are unpatentable under 35 U.S.C. § 103(a). *See Ebates Performance Marketing, Inc. d/b/a Rakuten Rewards v. IBM*, IPR2022-00133 (PTAB May 24, 2023) (Paper 35). IBM has not appealed this decision.

30. Nevertheless, IBM continued to press its infringement claims against Carvana throughout mid to late 2022. On May 3, 2022, McBride, a non-lawyer, emailed Carvana's outside counsel and its in-house IP counsel contending that while the '193 patent had been previously withdrawn from discussion given the 101 invalidation in *Zillow*, IBM "reserves the

8

right to bring it back into play depending on our strategy… (We might appeal 193 result too)." [sic]. Re-asserting an invalid patent was plainly frivolous. IBM also refused to withdraw the '849 or '234 patents given stated intentions to appeal both outcomes. McBride also said IBM had filed suit against Zynga in Delaware and enclosed a copy of the complaint suggesting counsel "may find [it] helpful in advising Carvana."

31. On June 6, 2022, McBride sent another license offer that was contingent on closing by June 30, 2022. Carvana did not respond to the offer and June 30, 2022 came and went. IBM's mode of operation was to continually withdraw then add back arguments, set arbitrary settlement deadlines and repeatedly threaten action in court, even threatening to re-assert an invalid patent.

32. Carvana never made a counteroffer to IBM's exorbitant settlement demands, either in 2022 or to this day.

33. Earlier this year, on February 8, 2023, IBM submitted a letter of "continuity" for "reminding you [Carvana's in-house IP lawyer] and your Executive Team that Carvana is and has been infringing 'IBM patents' the past 16 months." McBride stated, "[w]e have invited you on a number of occasions to engage in settlement discussions. For the most part, you have ignored the invitation."

34. On February 9, 2023, Carvana's outside counsel sent a very detailed and responsive position statement by email. Carvana disagreed with IBM's statement that it ignored IBM's demands, noting that on the contrary Carvana presented detailed and well-supported non-infringement and invalidity analyses, which were met with virtually no response from IBM. Carvana also pointed out that IBM had never explained why the *Chewy* decision was not dispositive as to Carvana's same non-infringement positions. Carvana stated the re-assertion of

IBM's '193 patent after it had been invalidated by a federal court was an act of bad faith. Carvana's counsel said he was not sure further discussion was necessary, particularly given what was pending against the Asserted Patents.

35. On July 26, 2023, McBride sent an email to Carvana's in-house and its outside counsel, stating IBM was not concerned about the adverse rulings and that IBM "has decided to move forward and prepare a Complaint against Carvana," and "[IBM] will be prepared to file and serve the Complaint *sometime* after October 1, 2023." McBride expressly directed that Carvana's "goal should be to achieve settlement *prior to* September 30, 2023." "To that end, we invite you to make IBM an offer to settle." (emphasis added).

36. Serial emails from McBride followed.

37. On August 8, 2023, McBride sent by email a new Notice letter from IBM to in-house counsel, "reminding" Carvana that IBM maintained its position that Carvana was infringing at least claim 1 of the '849 and '346 patents. Apparently acknowledging that in view of the *Chewy* non-infringement summary judgment IBM's assertion of infringement of claim 1 of the '849 patent was on extremely thin ice, the letter states that "IBM newly asserts that Carvana is also infringing claim 8" of the '849 patent. McBride's email again invited Carvana "to make IBM an offer to settle," which Carvana did not do.

38. Instead, on August 10, 2023, Carvana's outside counsel sent an email to McBride raising again, among other points, the fact that the "PTAB and courts have ruled adverse to the validity of the asserted patents or IBM's infringement positions" and that Carvana "will respond to your [August 8, 2023] Notice letter and offer to settle in due course." *See* Exhibit D.

39. In view of the unappealed PTAB ruling that claims 1, 3-6, 13, and 15-18 of the '234 patent were unpatentable, on August 11, 2023, McBride sent by email a new Notice letter to

10

Carvana, stating that in addition to the infringement assertions in the August 8, 2023 letter, IBM was now also asserting claim 7 of the '234 patent. McBride's email again invited Carvana "to make IBM an offer to settle."

40. The final straw in the negotiations came on August 21, 2023. It was then that McBride responded to Carvana's outside counsel's August 10, 2023 email. McBride angrily proclaimed, "You keep bringing up the *Chewy* appeal as if the Court rules for Chewy then somehow Carvana is exempt from litigation and therefore Carvana has no risk" but that "regardless of *Chewy* you will need to defend Carvana as to Claim 1 and 8 of the '849 patent." McBride suggested the prior PTAB and court rulings were irrelevant and raised yet again the *Groupon* verdict, arguing that when Groupon ignored IBM's offers to settle—it "cost them $57.5M plus litigation expenses." *See* Exhibit D.

41. Accordingly, before Carvana had a chance to respond "in due course" to McBride's July 26, 2023 email, IBM dismissed Carvana's *Chewy* position out-of-hand, without any explanation. IBM instead issued new Notice letters reasserting claim 1 of the '894 patent (one of the claims found not to have been infringed in *Chewy*), and for the first time claim 8 of the '894 patent (which has very similar claim elements as those at issue in claim 1), as well as claim 7 of the '234 patent. On top of the new infringement contentions, IBM threatened Carvana with the same fate as Groupon—a $57.5 million payout to IBM plus litigation expenses.

42. Carvana declined to comply with McBride's directive to "achieve" settlement by the end of September 2023 or otherwise further wander into the alternate universe of negotiations with IBM.

43. Very simply, IBM has been threatening to sue Carvana for the better part of the last two years. It has set several settlement deadlines that have passed while adding new patent

claims to the demands. IBM has refused to engage in good faith discussions regarding the weaknesses of its infringement and validity positions, nor has it recognized the reality of the court and PTAB decisions against it. All the while, with litigation threats hanging over Carvana's head, IBM has insisted that Carvana must pay now for patents subject to invalidation or dispositive non-infringement decisions.

44. Settlement efforts have been exhausted. The parties have failed to resolve this dispute by the date of IBM's latest self-imposed deadline, the end of September 2023.

45. Based on the above allegations, an actual and justiciable controversy exists between Carvana and IBM regarding Carvana's non-infringement of the Asserted Patents.

## COUNT I

### (Declaratory Judgment of Non-Infringement of the '849 Patent)

46. Carvana restates and re-alleges each of the allegations set forth in the paragraphs above.

47. Carvana has not infringed and does not infringe any claim of the '849 patent directly or indirectly, either literally or under the doctrine of equivalents.

48. As but one example, and without limitation, Carvana's accused website does not practice the "selectively storing advertising objects at a store established at the reception system" step recited in claim 1, or the "structuring advertising so that it may be selectively supplied to and retrieved at the reception systems for presentation" step recited in claim 8.

49. In *Chewy*, this Court construed "selectively storing advertising objects at a store established at the reception system" as meaning "retrieving advertising objects and storing at a store established at the reception system in anticipation of display concurrently with the applications" and made clear that "a proper construction of the disputed terms reflects that the

advertising objects must be 'pre-fetched.'" *Chewy, Inc. v. IBM*, 571 F. Supp. 3d 133, 141-43 (S.D.N.Y. 2021). This Court further clarified that "an object is not 'pre-fetched' when it is 'retrieved on demand' by the user, that is – an object is only 'pre-fetched' if it is retrieved and stored at the user's terminal 'before being requested by the user.'" *Chewy, Inc. v. IBM*, 597 F. Supp. 3d 669, 680 (S.D.N.Y. 2022).

50. Although claim 8 was not at issue in *Chewy*, the United States District Court for the District of Delaware similarly construed the "structuring advertising so that it may be selectively supplied to and retrieved at the reception systems for presentation" step recited in claim 8 as requiring that the advertising is "pre-fetched." *IBM v. Rakuten, Inc.*, No. 21-461, 2023 U.S. Dist. LEXIS 95352, *9 (D. Del. June 1, 2023) (citing *Chewy*, 571 F. Supp. at 141-42).

51. Carvana's website does not "pre-fetch" advertising, *i.e.*, it does not retrieve and store advertising before being requested by the user. IBM asserts that Carvana's website infringes the "selectively storing" and "selectively supplied and retrieved" limitations by pointing to the downloading of alleged advertising images that are "retrieved on demand" after they have been requested by the user. To the extent IBM now asserts these images are temporarily "cached" on the user's system for the next time the user visits the website, this argument fails as it was specifically rejected by this Court for failure to "pre-fetch" as required by the claims. *Chewy*, 597 F. Supp. 3d at 674-75.

52. Carvana does not practice other claim limitations in claims 1 and 8 of the '849 patent.

53. There is an actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, between Carvana and IBM concerning Carvana's non-infringement of the '849 patent.

54. Carvana is therefore entitled to a declaratory judgment that it has not infringed the '849 patent, directly or indirectly, either literally or under the doctrine of equivalents.

## COUNT II

**(Declaratory Judgment of Non-Infringement of the '234 Patent)**

55. Carvana restates and re-alleges each of the allegations set forth in the paragraphs above.

56. Carvana has not infringed and does not infringe any claim of the '234 patent directly or indirectly, either literally or under the doctrine of equivalents.

57. The PTAB ruled that claims 1, 3-6, 13, and 15-18 of the '234 patent are unpatentable. IBM did not appeal this decision. Accordingly, Carvana's accused website cannot infringe claims 1, 3-6, 13, and 15-18 of the '234 patent.

58. Without limitation, and as but one example with respect to claim 7 of the '234 patent, Carvana's accused website does not practice at least the following limitation: "generating the portal page such that the two or more stacks of portlets are generated as a stack of stacks, wherein the stack of stacks presents a first stack of portlets and a control for selecting a second stack of portlets from the two or more stacks of portlets that is not currently presented."

59. The '234 patent does not define the phrase "stack of portlets." However, the '234 patent explains that the purpose of the invention is to "provide[] an improved method, apparatus, and computer useable code for organizing the portlets as the number of portlets displayed increases to prevent the portal from becoming crowded." '234 patent, 3:7-10. The '234 patent further teaches that "[t]wo or more portlets typically occupy less space when stacked than they do when displayed individually, thereby reducing portlet clutter." *Id.*, 6:9-11. Consistent with the

goal of reducing clutter and overcrowding, the only example of a stack of portlets, shows the portlets (512, 514, 516, and 518) as overlapping and thus taking up less space.



FIG. 5

'234 patent, Fig. 5.

60. IBM asserts that Carvana's website infringes the limitation: "generating the portal page such that the two or more stacks of portlets are generated as a stack of stacks, wherein the stack of stacks presents a first stack of portlets and a control for selecting a second stack of portlets from the two or more stacks of portlets that is not currently presented" by pointing to (i) a grid of vehicles available for sale displayed on Carvana's website, which is the result of a user applying filters (e.g., Price, Make & Model, Body Type, etc.) to query Carvana's database of used vehicles for sale, as a "stack of portlets," and (ii) the "stack of stacks" as the ability to choose a different selection from the filters to query Carvana's database (the selection of "SUV" or "Coupe" from the "Body Type" filter), resulting in a different grid of vehicles available for sale.

61. Carvana's website does not practice this limitation for at least the following reasons:

15

      a.      Carvana's grid of vehicles available for sale is not a "stack of portlets" for at least the reason that the individual tiles of cars do not take up less space when "stacked" than individually, and

      b.      Carvana does not perform this limitation because the results are not "generated" until after the user chooses a selection from the filter and thus there is no "stack of stacks."

62. Carvana does not practice other claim limitations in any of the claims of the '234 patent not already invalidated by the PTAB.

63. There is an actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, between Carvana and IBM concerning Carvana's non-infringement of the '234 patent.

64. Carvana is therefore entitled to a declaratory judgment that it has not infringed the '234 patent, directly or indirectly, either literally or under the doctrine of equivalents.

## COUNT III

**(Declaratory Judgment of Non-Infringement of the '346 Patent)**

65. Carvana restates and re-alleges each of the allegations set forth in the paragraphs above.

66. Carvana has not infringed and does not infringe any claim of the '346 patent directly or indirectly, either literally or under the doctrine of equivalents.

67. As but one example, and without limitation, Carvana's accused website does not have a "protected resource" as properly construed in connection with claim 1.

68. Specifically, the accused Carvana website does not practice the limitation of "triggering a single-sign-on operation on behalf of the user in order to obtain access to a protected resource that *is* hosted by the second system, wherein the second system requires a user

16

account for the user to complete the single-sign-on operation *prior to* providing access to the protected resource….." '346 patent, 44:46-51 (emphasis added). The '346 patent makes clear that the "protected resource" must be in existence before the user triggers a single-sign-on operation.

69. IBM asserts the accused Carvana website contains a "protected resource" as the account information page of a user account.

70. But the accused Carvana site has no such "protected resource." The accused page is only created *after* a single-sign-on operation, and as such Carvana's account information cannot constitute a "protected resource."

71. Carvana does not practice other claim limitations in any of the valid claims of the '346 patent.

72. There is an actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, between Carvana and IBM concerning Carvana's non-infringement of the '346 patent.

73. Carvana is therefore entitled to a declaratory judgment that it has not infringed the '346 patent, directly or indirectly, either literally or under the doctrine of equivalents.

## **PRAYER FOR RELIEF**

Wherefore, Carvana respectfully requests that this Court:

A. Enter a judgment in favor of Carvana and against IBM declaring that Carvana has not infringed and does not infringe any claim of the '849 patent, directly or indirectly, either literally or under the doctrine of equivalents;

B. Enter a judgment in favor of Carvana and against IBM declaring that Carvana has not infringed and does not infringe any claim of the '234 patent, directly or indirectly, either literally or under the doctrine of equivalents;

C. Enter a judgment in favor of Carvana and against IBM declaring that Carvana has not infringed and does not infringe any claim of the '346 patent, directly or indirectly, either literally or under the doctrine of equivalents;

D. Enter a judgment that this is an exceptional case under 35 U.S.C. § 285 and award Carvana its costs, expenses, and reasonable attorneys' fees incurred in this action; and

E. Award Carvana such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rules of Civil Procedure 38(b), Carvana demands a trial by jury as to all issues and claims so triable.

DATED:  October 2, 2023                          **BALLARD SPAHR LLP**

By: /s/ Wendy R. Stein
Wendy R. Stein
1675 Broadway, 19th Floor
New York, NY 10019-5820
Email: steinw@ballardspahr.com
Telephone: 646.346.8078
Facsimile: 212.223.1942

Brian W. LaCorte (*pro hac vice* forthcoming)
Jonathon A. Talcott (*pro hac vice* forthcoming)
Drew M. Hensley (*pro hac vice* forthcoming)
BALLARD SPAHR LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Email: lacorteb@ballardspahr.com
Email: talcottj@ballardspahr.com
Email: hensleyd@ballardspahr.com
Telephone: 602.798.5400
Facsimile: 602.798.5405

*Counsel for Plaintiff Carvana, LLC*