# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

CARVANA, LLC,

Plaintiff,

v.

INTERNATIONAL BUSINESS
MACHINES CORPORATION,

Defendant.

Case No. 7:23-cv-08616 (KMK) (VR)

**CONFIDENTIALITY STIPULATION AND
PROPOSED PROTECTIVE ORDER**

WHEREAS, the parties having agreed to the following terms of confidentiality, and the Court having found that good cause exists for the issuance of an appropriately tailored confidentiality order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, it is hereby

ORDERED that the following restrictions and procedures shall apply to the information and documents exchanged by the parties in connection with the pre-trial phase of this action:

1.      Counsel for any party may designate any "Discovery Material" (i.e., any document, information or testimony provided in the course of discovery in this action), in whole or in part, as confidential if counsel determines, in good faith, that such designation is necessary to protect the interests of the client in information that is proprietary, a trade secret, or otherwise sensitive non-public information ("Confidential Information").  Information and documents designated by a party as Confidential Information will be stamped "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE," as applicable, pursuant to Paragraphs 4 and 6-8 below.

2.      **Scope.**  The protections conferred by this Order apply to Discovery Material as defined above and any Confidential Information copied or extracted therefrom, as well as all copies, excerpts, summaries, or compilations thereof, plus testimony, conversations, or presentations by parties or their counsel in court or in other settings that might reveal Confidential Information, provided that:

  a.      Nothing in this Order shall prevent or restrict a producing party's own disclosure or use of its own Discovery Material for any purpose; and nothing in this Order shall preclude any receiving party from showing Discovery Material to an individual who prepared the Discovery Material.

  b.      Except as otherwise ordered by the Court, any person may be examined as a witness at a deposition, hearing or trial and may testify concerning

1

Confidential Information as set forth below:

i.    A present director, officer, and/or employee of a producing party may be examined and may testify concerning all Confidential Information which has been produced by that party;

ii.   A former director, officer, and/or employee of a producing party may be examined and may testify concerning all Confidential Information of the producing party that establishes on its face or is established from other documents or testimony to have been previously received from or communicated to that person and of which he or she has prior knowledge, including any Confidential Information that refers to matters of which the witness has personal knowledge, has been produced by that party, and pertains to the period of periods of his or her employment.

iii.  Non-parties may be examined or testify concerning any document containing Confidential Information of a producing party that appears, on its face or from other documents or testimony, to have been previously received from or communicated to the non-party as a result of any contact or relationship with the producing party or a representative of such producing party.  Any person other than the witness, his or her attorney(s), and any such person qualified to receive such Confidential Information under this Order shall be excluded from the portion of the examination concerning such information, unless the producing party consents to persons other than qualified recipients being present at the examination.

c.   Nothing in this Order shall be construed to prejudice any party's right to seek modification of this Order as appropriate.

3.   **Access To and Use of Confidential Information.**  Any Confidential Information disclosed pursuant to this Order may be used solely in connection with the action. Nothing in this Protective Order shall be construed to prevent counsel from advising their clients with respect to this case based in whole or in part upon Confidential Information, provided counsel does not disclose Confidential Information except as provided in this Order. Any Personally Identifying Information ("PII") (e.g., social security numbers, financial account numbers, passwords and information that may be used for identity theft) exchanged in discovery shall be maintained by the receiving party in a manner that is secure.

a.   Secure Storage.  Confidential Information must be stored and maintained by the receiving party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

b.   Limitations.  Nothing in this Order shall restrict in any way the use or disclosure of Discovery Material by a receiving party: (a) that is or has

become publicly known through no fault of the receiving party; (b) that is lawfully acquired by or known to the receiving party independent of the producing party; (c) that is previously produced, disclosed, or provided by the producing party to the receiving party or a non-party without an obligation of confidentiality and not by inadvertence or mistake; (d) with the consent of the producing party; (e) pursuant to Order of the Court; or (f) as otherwise required by law or pursuant to a valid subpoena.

4.    **Designating Confidential Information.**

a.    Available Designations.  Any producing party may designate Discovery Material with any of the following designations, provided that it meets the requirements for such designations as provided herein:

i.    "CONFIDENTIAL"

ii.    "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY"

iii.    "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE"

b.    Written Discovery and Documents and Tangible Things.  Written discovery, documents, and tangible things including media that meet the requirements for the confidentiality designations listed in Paragraph 4.a above may be so designated by placing the appropriate designation on every page of the written material prior to production or in the case of media, on the media itself.  In the event that original documents or tangible things are produced for inspection, the original documents or tangible things shall be presumed to be designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" during the inspection.  Images or photographs taken during an inspection shall be presumed to be designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" and any reproductions of such images or photographs shall be appropriately marked by the party making such reproductions.  Thereafter, the producing party shall have a reasonable time to review and designate the appropriate documents as "CONFIDENTIAL", "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY", or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" if necessary prior to furnishing any copies or images to the receiving party.  Moreover, media containing documents may be designated by marking the media with the appropriate confidentiality designation.  If documents are printed from the media, they shall be immediately marked with the designation on the media.

c.    Deposition Testimony.  Parties or testifying persons or entities may designate deposition testimony with the appropriate designation by indicating on the record at the time the testimony is given or by sending

written notice that the testimony is designated within thirty (30) days of receipt of the transcript of the testimony.  Any designated Discovery Material that is used in the taking of a deposition shall remain subject to the provisions of this Protective Order, along with the transcript pages of the deposition testimony dealing with such Discovery Material.  In such cases, the court reporter shall be informed of this Protective Order and shall be required to operate in a manner consistent with this Protective Order.  In the event a designated deposition is videotaped, the filename of the video file shall reflect the highest confidentiality designation accorded to any testimony therein and all physical copies of the videotape shall contain a sticker containing the case caption and the following statement: "This videotape contains confidential testimony subject to a Protective Order and is not to be viewed or the contents thereof to be displayed or revealed except under the terms of the Court's Protective Order, or by other orders of the Court, or pursuant to written stipulation of the parties."

d.  Any court reporter or videographer who reports, transcribes, or videotapes testimony in this Action shall not disclose any Confidential Information, except pursuant to the terms of this Order.  To the extent that Confidential Information is used in depositions such information shall remain subject to the provisions of this Order, along with any transcript pages of the deposition testimony describing the information therein.

e.  In the event that any Confidential Information is used in any court proceeding in this Action, the confidentiality of such materials shall be protected as determined and directed by the Court.

f.  All Confidential Information not reduced to documentary, tangible, or physical form or which cannot be conveniently designated as set forth in Paragraph 4.b above, shall be presumed "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" and re-designated, as appropriate, by the producing party by informing the receiving party of the designation in writing.

5.  **Challenging Designations of Confidential Information.**  In the event a party challenges another party's designation of confidentiality, counsel shall make a good faith effort to resolve the dispute, and in the absence of a resolution, the challenging party may seek resolution by the Court as set forth in this paragraph.  Nothing in this Protective Order constitutes an admission by any party that Confidential Information disclosed in this case is relevant or admissible.  Each party reserves the right to object to the use or admissibility of the Confidential Information.

a.  A Party shall not be obligated to challenge the propriety of any designation of Discovery Material under this Order at the time the designation is made, and a failure to do so shall not preclude a subsequent

challenge thereto.

b.  Any challenge to a designation of Discovery Material under this Order shall be written, shall be served on Outside Counsel for the producing party, shall particularly identify the documents or information that the receiving party contends should be differently designated, and shall state the grounds for the objection.  In its written objection, the objecting party shall state its availability to meet and confer about the dispute.

    i.  The non-objecting party cannot unreasonably delay a meet and confer, and must make itself available to meet and confer. The designating party shall have the burden of justifying the appropriate designation;

    ii.  Failing agreement, the objecting party may bring the dispute to the Court for a ruling that the Discovery Material in question is not entitled to the status and protection of the producing party's designation.  The parties' entry into this Order shall not preclude or prejudice either party from arguing for or against any designation, establish any presumption that a particular designation is valid, or alter the burden of proof that would otherwise apply in a dispute over discovery or disclosure of information;

    iii.  Notwithstanding any challenge to a designation, the Discovery Material in question shall continue to be treated as designated under this Protective Order until one of the following occurs: (a) the party who designated the Discovery Material in question withdraws such designation in writing; or (b) the Court rules that the Discovery Material in question is not entitled to the designation.

c.  If it comes to the producing party's attention that designated material does not qualify for protection at all, or does not qualify for the level of protection initially asserted, then the producing party must promptly notify all other parties that it is withdrawing or changing the designation.

6.  **Discovery Material Designated as "CONFIDENTIAL"**

a.  The party producing any given Discovery Material may designate as "CONFIDENTIAL" if it contains or reflects:

    i.  Confidential, proprietary, trade secret, and/or commercially sensitive information;

    ii.  Any information of a personal or intimate nature regarding any individual; or

  iii.  Any other category of information hereinafter given confidential status by the Court.

 b.  Documents designated as "CONFIDENTIAL" shall not be disclosed by any person other than the producing party to any person, except:

  i.  Employees of the requesting party who have agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A;

  ii.  "Outside Counsel" (i.e., outside attorneys who appear on the pleadings or docket for this action as counsel for a party retained specifically for this action), including any partners, associates, staff, and employees of such Outside Counsel assigned to assist in the litigation;

  iii.  Up to two (2) "In-house Counsel" designated by each Party provided that each such designated person (i) has agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A, and (ii) has been previously identified by providing the producing party a completed copy of Exhibit B (i.e., with the section applicable to the identifying party filled out and signed by the identified person(s)) and not been objected to.  Should there be any additional persons named or changes to the identified persons or information in Exhibit B (e.g., Title information), the identifying party shall promptly serve an updated copy of Exhibit B.  A Party may object in writing to a designated In-house Counsel within five (5) business days of receiving a completed or updated copy of Exhibit B.  In the absence of an objection at the end of the five (5) business day period, the person shall be deemed approved under this Protective Order.[1]  There shall be no disclosure of Confidential Information to any designated In-house Counsel prior to expiration of this five (5) business day period, unless the producing party, in writing, approves the designated In-house Counsel and waives this non-disclosure period.  If the producing party objects to disclosure to the designated In-house Counsel within such five (5) business day period, the parties shall meet and confer via video conference within three (3) business days following the objection, and shall attempt in good faith to resolve the dispute on an informal basis.  If the dispute is not resolved, the party objecting to the disclosure will have seven (7) calendar days from the date of the meet and confer to seek relief from the Court.  If relief is not sought from the Court within that time, the objection will be deemed withdrawn.  If relief is sought,

---

[1] The Parties have agreed to approve and waive the 5-day objection period in this Section 6(b)(iii) as to Carvana counsel Jessica Wilson and as to IBM's first identified In-house Counsel.

Confidential Information shall not be disclosed to the designated In-house Counsel in question until the objection is resolved by the Court.

iv.    Consultants or experts assisting in the prosecution or defense of the matter and who are not current employees of the receiving party or employed by competitors of the producing party, provided that (i) such person has signed the acknowledgement form annexed hereto as Exhibit A agreeing to be bound by the terms of this Protective Order, and (ii) no unresolved objections to such disclosure exist after proper notice has been given to all parties as set forth in Paragraph 9.b below;

v.    Court reporters, stenographers and videographers retained to record testimony or argument taken in this Action or any appeal therefrom;

vi.    The Court (including any mediator or other person designated by the Court to have access to Confidential Information;

vii.    Graphics, translation, design, jury, and/or trial consulting services including mock jurors retained by a party, provided they have signed the acknowledgement form annexed hereto as Exhibit A agreeing to be bound by the terms of this Protective Order;

viii.    Data processing vendors, photocopy, document imaging and database services, and consultant retained by the receiving party or its outside counsel to set up, maintain, and/or operate computer systems or litigation databases or to convert data for inclusion in such databases;

ix.    As to any document, its author, its addressee, and any other person indicated on the face of the document as having received a copy or otherwise involved in the subject matter of the document;

x.    Any other person with the prior written consent of the producing party.

7.    **Discovery Material Designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY"**

a.    The party producing any given Discovery Material may designate as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" only such portion of such material as consists of:

i.    Proprietary financial or technical information such that the producing party reasonably believes that the disclosure of such Discovery Material is likely to cause economic harm or

7

competitive disadvantage to the producing party; or

ii.    Commercially sensitive competitive information, including but not limited to information obtained from a non-party pursuant to a current nondisclosure agreement, strategic plans, technical documents that would reveal trade secrets, settlement agreements or settlement communications, and confidential technical, sales and financial information, and such that the producing party reasonably believes that the disclosure of such Discovery Material is likely to cause economic harm or competitive disadvantage to the producing party.

b.    Documents designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" shall not be disclosed by any person other than the producing party to any person, except:

i.    Outside Counsel, including any partners, associates, staff, and employees of such Outside Counsel assigned to the litigation;

ii.    Consultants or experts assisting in the prosecution or defense of the matter and who are not current employees of the receiving party or competitors of the producing party, provided that (i) such person has signed the acknowledgement form annexed hereto as Exhibit A agreeing to be bound by the terms of this Protective Order, and (ii) no unresolved objections to such disclosure exist after proper notice has been given to all parties as set forth in Paragraph 9.b below;

iii.    Court reporters, stenographers and videographers retained to record testimony or argument taken in this Action or any appeal therefrom;

iv.    The Court (including any mediator or other person designated by the Court to have access to Confidential Information;

v.    Graphics, translation, design, jury, and/or trial consulting services including mock jurors retained by a party, provided they have signed the acknowledgement form annexed hereto as Exhibit A agreeing to be bound by the terms of this Protective Order;

vi.    Data processing vendors, photocopy, document imaging and database services, and consultant retained by the receiving party or its outside counsel to set up, maintain, and/or operate computer systems or litigation databases or to convert data for inclusion in such databases;

vii.    As to any document, its author, its addressee, and any other person indicated on the face of the document as having received a

copy or otherwise involved in the subject matter of the document;

viii.  Any other person with the prior written consent of the producing party.

c.  Notwithstanding the foregoing, the two (2) In-house Counsel identified pursuant to section 6.b.iii may receive documents designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" only if the producing party and any applicable third party agree to such disclosure in writing.

8.  **Discovery Material Designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE"**

a.  The party producing any given Discovery Material may designate as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" only such portion of such material as consists of:

i.  Confidential or proprietary "Source Code" (i.e., computer instructions and data definitions expressed in a form suitable for input to an assembler, compiler, interpreter, other translator, or other data processing module, as well as any and all programmer notes, annotations, and other comments of any type related thereto that accompany and are included in the code file(s)); or

ii.  Materials containing, reflecting, or describing such Source Code.

b.  Documents designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" shall not be disclosed by any person other than the producing party to any person, except:

i.  Outside Counsel, including any partners, associates, staff, and employees of such Outside Counsel assigned to the litigation;

ii.  Up to three (3) consultants or experts assisting in the prosecution or defense of the matter and who are not current employees of the receiving party or competitors of the producing party, provided that (i) such person has signed the acknowledgement form annexed hereto as Exhibit A agreeing to be bound by the terms of this Protective Order, and (ii) no unresolved objections to such disclosure exist after proper notice has been given to all parties as set forth in Paragraph 9.b below;

iii.  Court reporters, stenographers and videographers retained to record testimony or argument taken in this Action or any appeal therefrom;

iv.  The Court (including any mediator or other person designated by

the Court to have access to Confidential Information;

  v.  Graphics, translation, design, jury, and/or trial consulting services including mock jurors retained by a party, provided they have signed the acknowledgement form annexed hereto as Exhibit A agreeing to be bound by the terms of this Protective Order;

  vi.  As to any document, its author, its addressee, any other person indicated on the face of the document as having received a copy, and any other person indicated on or in the document or code;

  vii.  Any other person with the prior written consent of the producing party.

c.  The parties agree to meet and confer during pretrial discussions about the disclosure of Source Code to graphics and design services retained by a party, data processing vendors, photocopy, document imaging and database services, and consultants retained by the receiving party or its Outside Counsel to set up, maintain, and/or operate computer systems or litigation databases or to convert data for inclusion in such databases.

d.  <u>Disclosure and Review of Source Code</u>.  Documents or other things designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" shall be provided the following further protections:

  i.  Any Source Code that is produced by IBM and designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" shall be made available for inspection in electronic format at the New York City, New York office of the IBM's Outside Counsel or another mutually agreeable location.

  ii.  Other than one review session to take place at the New York City office of Carvana's Outside Counsel, any Source Code that is produced by Carvana and designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" shall be made available for inspection in electronic format at the Phoenix, Arizona office of Carvana's Outside Counsel.

  iii.  The producing party shall provide a manifest of all Source Code modules available for review, which shall be updated as additional Source Code becomes available.  This manifest will be supplied in electronic form and will list reasonably available identifying information for the Source Code modules, such as (to the extent practicable) the name, location, and MD5 checksum of every source and executable file.

  iv.  For purposes of this Protective Order, the term "Inspection

Session" shall mean a contiguous series of days, not to exceed one week, in which the receiving party is conducting an inspection of the Source Code.  The receiving party shall provide ten (10) business days' notice prior to commencing its initial Inspection Session, including those individuals who will attend the Inspection Session. Following its initial inspection Session, the receiving party shall provide at least three (3) business days' notice to the producing party in advance of any subsequent Inspection Session. The receiving party shall conduct any inspections during regular business hours (9:00 a.m. to 6:00 p.m. local time).  However, to the extent access is necessary outside of normal business hours, the parties agree to cooperate in good faith and make reasonable efforts to accommodate reasonable requests for access outside of normal business hours.

v.      The receiving party's Outside Counsel and/or experts shall be entitled to take notes relating to the Source Code but may not copy entire lines or commands of the Source Code into the notes. No copies or images of all or any portion of the Source Code may leave the room in which the Source Code is inspected except as otherwise provided herein.  Further, no other written or electronic record of the Source Code is permitted except as otherwise provided herein. Unless otherwise agreed in advance by the parties in writing, the receiving party's Outside Counsel and/or experts shall remove all materials they brought to the room where they are inspecting the Source Code at the end of each day.  The producing party shall not be responsible for any items left in the room following each day of an Inspection Session.  Any notes related to the Source Code or printouts of excerpts of Source Code may only be created or retained by the receiving party in accordance with the provisions of this order.  All notes related to the Source Code, and all notes, copies, or printouts reflecting information that is designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" must be marked with the appropriate designation.  Nothing in the foregoing shall be interpreted to require the receiving party to disclose the substance of any notes taken during an Inspection Session.

vi.     At the depositions of the producing party's witnesses designated pursuant to Federal Rule of Civil Procedure 30(b)(6) and at the receiving party's request, the producing party will make available to the witness all Source Code files reasonably requested by the receiving party, in computer-searchable electronic format, , provided that the receiving party requests a copy of the Source Code files be made available at the deposition at least five (5) business days before the scheduled date of the deposition if the

producing party has designated the relevant witness by that time. The parties further agree to negotiate in good faith the extent to which similar access to source code modules is necessary and appropriate during any Rule 30(b)(1) deposition(s) of producing party's other witnesses.

vii.   Source Code will be made available by the producing party to the receiving party's Outside Counsel (pursuant to Paragraph 8.b.i) and/or experts (pursuant to Paragraph 8.b.ii) in a private room at a secure office or agreed upon location on a separate secured computer without Internet access or network access to other computers ("Source Code Computer"), as necessary and appropriate to prevent and protect against any unauthorized copying, transmission, removal or other transfer of any Source Code outside or away from the Source Code Computer.  The Source Code Computer shall include a working keyboard, mouse, and two monitors.  The Source Code Computer shall include software utilities which allow reviewers to view, search, and analyze the source code.  At minimum, these utilities must provide the ability to (i) view, search, and line-number any source file, (ii) search for a given pattern of text through a number of files, (iii) compare two files and display their differences, and (iv) compute the MD5 checksum of a file.  The Source Code Computer shall also include software sufficient to create or print PDF files of excerpts of the Source Code (e.g., Notepad++).  The Source Code Computers shall, at the receiving party's request, also include reasonable and commercially-available software tools appropriate for viewing, searching, and analyzing the type of Source Code produced on the platform produced.  The producing party shall install such software tools provided that (i) the receiving party possesses an appropriate license to such software tools; (ii) such software tools are reasonably necessary for the receiving party to perform its review of the Source Code consistent with all of the protections herein; (iii) the receiving party provides install files for the software tools, or URLs where they can be downloaded; and (iv) such software tools are not unduly burdensome to install on the Source Code Computers. The producing party may object to a requested software tool within two (2) business days of the receiving party's request.  Any objections to software requested by the receiving party shall be resolved in accordance with Paragraph 8.d.x below.  Subject to any objection, the producing party shall install requested software on the Source Code Computer prior to the inspection of Source Code.

viii.   The producing party may not monitor or record via any electronic means the activities of the receiving party's representatives during

any Source Code review.  The producing party shall be entitled to have a person observe all entrances and exits from the source code viewing room.  The producing party may also visually monitor the activities of the receiving party's representatives during any source code review other than their keystrokes, only to ensure that there is no unauthorized recording, copying, or transmission of the source code.  The receiving party shall maintain a daily log of the names of persons who enter the inspection room to view the source code and when they enter and depart.  The producing party shall be entitled to a copy of the log.

ix.     The receiving party may request, as necessary for this action, that the producing party print a reasonable number of pages of the Source Code.  Prior to making any such request, the receiving party agrees to meet and confer with the producing party to reach an agreement on a reasonable total number of pages, based on the review of the Source Code then available, and subject to revision should additional Source Code subsequently be produced, that the receiving party believes in good faith are necessary to litigate its claims or defenses in the case, prepare discovery responses, court filings or pleadings, other papers (including an expert reports), and related drafts and correspondence.  The parties understand and agree that the Source Code relied upon in contentions and expert reports must be printed.  A reasonable request for printouts of Source Code shall be presumed if the request does not include more than twenty-five (25) contiguous pages.  Should the receiving party request a printout of more than 25 contiguous pages, the parties shall meet and confer as to whether the request is reasonable.  The parties understand and agree that the above page limitations were agreed upon without knowledge of the number of pages of Source Code that may or should be necessary for use in this action.  Source Code may be printed for only these limited purposes.  Printing Source Code for any other purpose, including for review of the Source Code in the first instance, is not permitted.  The receiving party shall identify the Source Code it requests to be printed in one of two ways: (1) identifying the file name, file path, beginning line, and ending line for each excerpt of Source Code requested to be printed; or (2) printing the requested excerpt to a PDF file, provided each page of the PDF file includes the file name, file path, and line numbers of the printed excerpt.  The receiving party shall make the request to print excerpts of Source Code to the producing party in writing.

x.      Unless the receiving party's request to print excerpts of Source Code is subject to an objection under Paragraph 8.d.x below, within five (5) business days of receiving the request, the producing party shall send up to three (3) electronic, searchable

copies of the requested excerpts of Source Code to Outside Counsel for receiving party or the selected experts who are entitled to receive Confidential Information designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE," for next day delivery.  Each page of the printed copies of the excerpts of Source Code shall include a Bates label number, the file name, the file path, and the label "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE".

xi.  The producing party shall have five (5) business days in which to object in writing to a request to print excerpts of Source Code pursuant to Paragraph 8.d.ix above.  If the producing party makes a reasonable request for additional time to review a request to print excerpts before making an objection, then either the requesting party shall agree to the requested extension or the parties shall meet and confer within the objection period in a good faith attempt to agree upon an alternative extended objection deadline.  If objection is made, the parties shall meet and confer within five (5) business days in a good faith attempt to resolve the objection.  If the objection is not resolved, the producing party shall have five (5) business days after the expiration of the meet and confer period in which to file a motion for relief from production of the printout(s) that are the subject of the objection.  The printout(s) shall be retained by the producing party and not produced, pending the Court's resolution of the motion.  If the requesting party makes a reasonable request for expedited printing of excerpts, then either the producing party shall agree to the expedited printing or the parties shall promptly meet and confer in a good faith attempt to agree upon alternative expedited objection and expedited printing deadlines.

xii.  Only persons who are permitted to see Confidential Information designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" can receive or view physical printouts of excerpts of Source Code.  If the receiving party's Outside Counsel, consultants, or experts receive printouts of excerpts of Source Code or Source Code Documents (as defined in Paragraph 8.d.xii below), the receiving Party shall ensure that such Outside Counsel, consultants, or experts keep such printouts under their direct control in a secured area in the offices of such Outside Counsel, consultants, or expert.  The receiving party may also temporarily keep the Source Code Printouts at: (i) the Court for any proceedings(s) relating to the Source Code or Source Code Documents, for the dates associated with the proceeding(s); (ii) the sites where any deposition(s) relating to the Source Code or Source Code Documents are taken, for the dates associated with

the deposition(s); and (iii) any intermediate location reasonably necessary to transport the printouts to a Court proceeding or deposition), provided that the printouts or photocopies are kept in a secure manner that ensures access is limited to the persons authorized under this Order.

xiii.    The receiving party may include excerpts of Source Code in a pleading, exhibit, expert report, discovery document, deposition transcript, other Court document, or any drafts or work product generated in the course of preparing these documents ("Source Code Documents").  The receiving party shall only include such excerpts as are reasonably necessary for the purposes for which such part of the Source Code is used.

xiv.    To the extent portions of Source Code are quoted in a Source Code Document, either (1) the entire document will be stamped and treated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" or (2) those pages containing quoted source code will be separately bound, stamped, and treated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE."  Any "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" filed with the Court shall be filed under seal.  No Source Code Document shall be publicly filed.  Copies of Source Code that are marked as deposition exhibits shall not be provided to the Court Reporter or attached to deposition transcripts; rather, the deposition record will identify the exhibit by its production numbers.

xv.    The receiving party may create an electronic copy or image of the Source Code only when reasonably necessary to accomplish any filing with the Court or to serve any pleadings or other papers on any other party; or to prepare other necessary case materials such as testifying expert reports, consulting expert written analyses, and related drafts and correspondences.  Images or copies of Source Code shall not be included in correspondence between the parties (references to production numbers and Source Code page and line numbers shall be used instead) and shall be omitted from pleadings and other papers except to the extent permitted herein.

xvi.    A representative for Outside Counsel to the receiving party shall certify by declaration that such copies have been destroyed within sixty (60) days of the final disposition of this Action.

e.    Any Source Code that governs any accused functionality of any accused product, whether or not designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE," if not produced on a stand-alone machine pursuant to Paragraph 8.d above, shall, to the extent

practicable, be produced in native form with original file names and directory structure (i.e., relative location in folders and subfolders) to allow counsel and experts to use software utilities to view, search, and analyze the Source Code pursuant to Paragraph 8.d.  In the event such Source Code cannot practically be provided in such form, the parties agree to negotiate in good faith the manner and logistics of making such Source Code available.

9.     **Experts and Consultants**.

a.     Confidential Information shall not be disclosed to an expert or consultant if that person is currently, or anticipates becoming, an officer, director or employee of either a party, or a competitor of a party.

b.     Prior to disclosing any Confidential Information to any outside experts or consultants, the party seeking to disclose such information shall provide the producing party or parties with written notice that includes:

     i.     the name of the expert or consultant;

     ii.     the present employer, business address, and title of the expert or consultant;

     iii.     an up-to-date curriculum vitae of the expert or consultant which shall contain (a) a list of companies with which the expert or consultant has consulted or been employed for the last five (5) years, the dates of such consultancy or employment, and a brief description of the subject matter of such consultancy or employment, (b) a list of publications for the past ten years, and (c) a list of all other cases in which, during the previous five (5) years, the expert or consultant had testified at as an expert at trial or by deposition and a brief description of the subject matter of the engagement for these cases; and

     iv.     a signed copy of the "Agreement to Be Bound by Protective Order" (Exhibit A hereto), executed by the expert or consultant.

c.     Within five (5) business days of receiving written notice that the receiving party intends to disclose Confidential Information to an outside expert or consultant, the producing party or parties may object in writing to the proposed disclosure for good cause.  In the absence of an objection at the end of the five (5) business day period, the person shall be deemed approved under this Protective Order.  There shall be no disclosure of Confidential Information to any expert or consultant prior to expiration of this five (5) business day period.  If the producing party objects to disclosure to the expert or consultant within such five (5) business day period, the parties shall meet and confer via video conference within three (3) business days following the objection, and shall attempt in good

faith to resolve the dispute on an informal basis. If the dispute is not resolved, the party objecting to the disclosure will have seven (7) calendar days from the date of the meet and confer to seek relief from the Court. If relief is not sought from the Court within that time, the objection will be deemed withdrawn. If relief is sought, Confidential Information shall not be disclosed to the proposed expert or consultant in question until the objection is resolved by the Court.

d.  For purposes of this section, "good cause" shall include, but not be limited to, an objectively reasonable concern that the proposed outside expert or consultant will, advertently or inadvertently, use or disclose Discovery Materials in any way that is inconsistent with the provisions contained in this Order.

10.  **Disclosure of Confidential Information**. Prior to disclosing or displaying the Confidential Information to any person, including the persons identified in Paragraphs 6-8 above, counsel must:

a.  Inform the person of the confidential nature of the information or documents;

b.  Inform the person that this Court has enjoined the use of the information or documents by him/her for any purpose other than this litigation and has enjoined the disclosure of the information or documents to any other person; and

c.  Require each such person identified in Paragraphs 6.b.iii, 6.b.iv, 6.b.x, 7.b.ii, 7.b.viii, 7.c, 8.b.ii, and 8.b.vi above to sign an agreement to be bound by this Order in the form attached as Exhibit A.

11.  **Inadvertent Failure To Designate By Producing Party**. The disclosure of a document or information without designating it as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" shall not constitute a waiver of the right to designate such document or information as Confidential Information provided that the producing party notifies all receiving parties that such Discovery Material is protected under one of the categories of this Order promptly after the producing party learns of its inadvertent failure to so designate. If so designated, the document or information shall thereafter be treated as Confidential Information subject to all the terms of this Stipulation and Order.

a.  A receiving party shall not be in breach of this Order for any use of such Discovery Material before the receiving party receives notice of the inadvertent failure to designate. Once a receiving party has received notice of the inadvertent failure to designate pursuant to this provision, the receiving party shall treat such Discovery Material at the appropriately designated level pursuant to the terms of this Protective Order. To the extent that such information may already have been

disclosed to persons not authorized to see the "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE," the receiving party shall promptly notify the producing party of such disclosure, and make every reasonable effort to retrieve the information promptly from such persons and to limit any further disclosure to unauthorized persons.

12. **Inadvertent Disclosure of Privileged Material by Producing Party**.  Pursuant to Federal Rule of Evidence 502, the production of privileged or work product protected documents or communications, electronically stored information ("ESI") or information, whether inadvertent or otherwise, shall not constitute a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding.  This Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d). Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

      a.      A producing party's inadvertent disclosure of Discovery Material subject to the attorney-client privilege, or work-product immunity, or any other applicable privilege or immunity from discovery, will not waive the applicable privilege, immunity, and/or protection if a request for return of such inadvertently produced Discovery Material is made promptly after the producing party learns of its inadvertent production.

      b.      Upon a request from any producing party who claims to have inadvertently produced Discovery Material that it believes is privileged, immune, and/or protected, each receiving party shall immediately return, destroy or sequester all copies of such inadvertently produced Discovery Material and destroy the content of any such inadvertently produced Discovery Material in any receiving party work product until the dispute is resolved.

      c.      Nothing herein shall prevent the receiving party from preparing a record for its own use containing the date, author, addresses, and topic of the inadvertently produced Discovery Material and such other information as is reasonably necessary to identify the Discovery Material and describe its nature to the Court in any motion to compel production of the Discovery Material.  The receiving party shall not use such information for any other purpose until further Order of the Court.  Nothing herein shall prevent the receiving party from challenging the propriety of the attorney-client privilege or work product immunity or other applicable privilege or immunity designation by submitting a written challenge to the Court, but the challenge shall not assert as a ground for production the fact or circumstances of the inadvertent production or the contents of the materials that was gained due to the inadvertent production.

13.     **Inadvertent Disclosure by Receiving Party**.  In the event that a receiving party discloses any Confidential Information subject to this Order to any person or persons not authorized to receive such disclosure under this Protective Order, the receiving party responsible for making such disclosure shall notify counsel for the producing party whose Discovery Material has been disclosed immediately upon discovery of the inadvertent disclosure and shall provide to such counsel all known relevant information concerning the nature and circumstances of the disclosure.  The responsible disclosing party shall also promptly take all reasonable measures to retrieve the improperly disclosed Discovery Material and to ensure that no further or greater unauthorized disclosure and/or use thereof is made. Unauthorized or inadvertent disclosure does not change the status of Discovery Material or waive the right to hold the disclosed document or information as Confidential Information.

14.     **Non-Party Use of This Protective Order**.  A non-party producing information or material, whether voluntarily or pursuant to a subpoena or a court order, may designate such material or information in the same manner and shall receive the same level of protection under this Protective Order as any Party to that Action.  However, non-parties shall not have access to any "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" produced by any party in this Action, except as provided in Paragraph 2.b above.

15.     **Filing Confidential Information**.  Notwithstanding the designation of information as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" in discovery, other than with respect to source code, which the parties agree must be filed under seal, there is no presumption that such information shall be filed with the Court under seal.  The parties shall follow the Court's procedures for requests for filing under seal.

16.     **Prosecution Bar**.  Absent the written consent of the producing party, any person who receives or views technical information designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL –ATTORNEYS' EYES ONLY – SOURCE CODE" shall not be personally involved in prosecuting and/or amending patent applications, specifications, claims, and/or responses to office actions, directed to the subject matters of the patents-in-suit (including, for example, (i) storing, delivering, and presenting applications and targeted advertising in interactive services provided on a computer network, (ii) stacking portlets in a portal page, and (iii) user single-sign-on operations within a federated computer environment), before any foreign or domestic agency, including the United States Patent and Trademark Office.  These prohibitions are not intended to and shall not preclude counsel from participating in proceedings on behalf of a party challenging the validity of any patent, and are not intended, inter alia, to preclude counsel from participating directly or indirectly in reexamination, *inter partes* review, covered business method review, or reissue proceedings on behalf of a party, so long as that party does not or cannot amend the patent claims.  These prohibitions shall begin when the affected individual first receives access to any "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY– SOURCE CODE" material in this Action, and shall end two (2) years after the final resolution of this action, including all appeals.

17.     **Final Disposition**.  At the conclusion of litigation, Confidential Information and

any copies thereof shall be promptly (and in no event later than thirty (30) days after entry of final judgment no longer subject to further appeal) returned to the producing party or certified as destroyed, except that the parties' counsel shall be permitted to retain their working files on the condition that those files will remain protected.

18. **<u>Miscellaneous</u>**.

   a.   In addition to the provisions set forth in this Protective Order, the electronic discovery process in this action shall further be governed by the provisions of the Electronic Discovery Order attached as Exhibit C.

   b.   <u>Computation of Time</u>.  The computation of any period of time prescribed or allowed by this Order shall be governed by the provisions for computing time set forth in Federal Rules of Civil Procedure 6(a) and 6(d), unless explicitly noted otherwise in this Order.

   c.   <u>Right to Further Relief</u>.  Nothing in this Order abridges the right of any person to seek its modification by the Court in the future for good cause.  By stipulating to this Order, the parties do not waive the right to argue that certain material may require additional or different confidentiality protections than those set forth herein.

   d.   <u>Termination of Action and Retention of Jurisdiction</u>.  The parties agree that the terms of this Protective Order shall survive and remain in effect after the termination of the above-captioned action.  The Court shall retain jurisdiction after termination of this action to hear and resolve any disputes arising out of this Protective Order.

   e.   <u>Persons Bound</u>.  This Order shall be binding upon the parties hereto, their attorneys, and their successors, legal representatives, assigns, subsidiaries, divisions, employees, retained consultants and experts, and any persons or organizations in possession of Discovery Material subject to this Protective Order.

   f.   <u>Right to Assert Other Objections</u>.  By stipulating to the entry of this Order, no Party waives any right it otherwise would have to object to searching for, disclosing, or producing any information or item.  Similarly, no party waives any right to object on any ground to use in evidence of any of the material covered by this Order.  This Order shall not constitute a waiver of the right of any party to claim in this action or otherwise that any Discovery Material, or any portion thereof, is privileged or otherwise non-discoverable, or is not admissible in evidence in this action or any other proceeding.

   g.   <u>Burdens of Proof</u>.  Notwithstanding anything to the contrary above, nothing in this Order shall be construed to change the burdens of proof or legal standards applicable in disputes regarding whether particular Discovery Material is confidential, which level of confidentiality is

appropriate, whether disclosure should be restricted, and if so, what restrictions should apply.

h.  <u>Other Proceedings</u>.  By entering this Order and limiting the disclosure of information in this action, the Court does not intend to preclude another court from finding that information produced in this case may be relevant and subject to disclosure in another case.  Any person or party subject to this Order who becomes subject to a motion to disclose another party's information designated as confidential pursuant to this Order shall promptly notify that party of the motion so that the party may have an opportunity to appear and be heard on whether that information should be disclosed.

SO STIPULATED AND AGREED.

Dated: _____, 20__
              April 2              24
      White Plains, New
      York

_____/s/ Wendy R. Stein_____          _____/s/ William N. Yau_____
Counsel for Plaintiff(s)                       Counsel for Defendant(s)

SO ORDERED.

Hon. Victoria Reznik, U.S.M.J.

21

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

CARVANA, LLC,

                          Plaintiff,

v.

INTERNATIONAL BUSINESS
MACHINES CORPORATION,

                          Defendant.

Case No. 7:23-cv-08616 (KMK) (VR)

**JURY TRIAL DEMANDED**

**AGREEMENT TO BE BOUND BY PROTECTIVE ORDER**
**(EXHIBIT A)**

I, _____, acknowledge and declare that I have received a copy of the Protective Order ("Order") in *Carvana, LLC v. International Business Machines Corporation,* United States District Court, Southern District of New York, Civil Action No. 7:23-cv-08616 (KMK) (VR).  Having read and understood the terms of the Order, I agree to be bound by the terms of the Order and consent to the jurisdiction of said Court for the purpose of any proceeding to enforce the terms of the Order.

Name of individual:

Present occupation/job description:

Name of Company or Firm:

Address:

Dated:

_____
[Signature]

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CARVANA, LLC,<br><br>                    Plaintiff,<br><br>v.<br><br>INTERNATIONAL BUSINESS<br>MACHINES CORPORATION,<br><br>                    Defendant. | Case No. 7:23-cv-08616 (KMK) (VR)<br><br>**JURY TRIAL DEMANDED** |

**DESIGNATED IN-HOUSE COUNSEL**
**(EXHIBIT B)**

I acknowledge and declare that I am an attorney employed by a party with responsibility for managing this action and that as an In-house Counsel designated pursuant to the Protective Order ("Order") in *Carvana, LLC v. International Business Machines Corporation,* United States District Court, Southern District of New York, Civil Action No. 7:23-cv-08616 (KMK) (VR), I will have access to other companies' Confidential Information and shall not use any such Confidential Information to advise my employer regarding decisions relating to competing with those other companies.

Designated In-House Counsel

For IBM

1.    Name: _____      Title:_____

                                      Signature:_____

2.    Name: _____      Title:_____

                                        Signature:_____

For Carvana

1.      Name: _____        Title:_____

                                                Signature:_____

2.      Name: _____        Title:_____

                                                Signature:_____

# EXHIBIT C

**EXHIBIT C**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CARVANA, LLC, | Case No. 7:23-cv-08616 (KMK) (VR) |
| Plaintiff, | **ELECTRONIC DISCOVERY** |
| v. | **STIPULATION AND ORDER** |
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | |
| Defendant. | |

Plaintiff Carvana, LLC and Defendant International Business Machines Corporation, by and through their undersigned counsel, hereby agree to this Stipulated Order Regarding Discovery of Electronically Stored Information (the "Order").

## 1.  PURPOSE AND SCOPE

This Order will govern discovery of Electronically Stored Information ("ESI") in this case in a manner that promotes a "just, speedy, and inexpensive determination" of this action, as required by Fed. R. Civ. P. 1.  Nothing in this Order shall alter the parties' respective rights or obligations under the Federal Rules of Civil Procedure, or establish any agreement regarding the subject matter or scope of discovery in this action, or the relevance or admissibility of any ESI or other document or thing.

## 2.  COOPERATION

The parties commit to cooperate in good faith throughout this matter. No party may seek relief from the Court concerning compliance with this Order or modification thereof unless it has conferred in good faith with the other party.  In the event that the parties are unable to agree after

conferring in good faith with the other party, the following default standards shall apply until further order of the Court or until the parties are able to reach an agreement.

### 3.  DEFINITIONS

"Custodial Documents" includes a custodian's electronic documents as maintained or stored in any repository (whether email account, drive or electronic file)[1] and hard copy documents. For the avoidance of doubt, Custodial documents do not include Non-Custodial Data Sources, as defined herein.

"Documents" means any recorded information—including, but not limited to, any writings, drawings, graphs, charts, photographs, sound recordings, images, memoranda, correspondence and other data, data records or data compilations—stored in any medium from which information can be obtained, whether as ESI or in hard copy. For the avoidance of doubt, Documents includes both Custodial Documents and Non-Custodial Data Sources, as those terms are defined herein.

"Named Custodians" means the individuals most likely to have discoverable Custodial Documents in their possession, custody, or control, to be identified by the parties.

"Non-Custodial Data Sources" means systems or containers that store ESI, but over which an individual custodian does not organize, manage, or maintain the ESI in the system or container (*e.g.*, enterprise system or database, data warehouses, centralized data sources such as shared drives or group folders).

---

[1] The parties have agreed to forego any search, collection or production of email, texts or internal team messaging, such as Slack, in this patent action, and the same shall not be considered Custodial Documents.  Should this agreement change, the parties will modify this agreement in writing. This agreement extends only to parties and does not preclude a party from seeking email from a non-party.

"Electronically Stored Information" or "ESI," means information or data of any kind, stored in or on any storage media located on workstations, servers, disks, USB flash media, or other real or virtualized devices or media.

"Load File" means an electronic file containing information identifying a set of paper-scanned images and/or processed ESI and indicating where individual pages or files belong together as Documents, including attachments, and where each Document begins and ends. A Load File will also contain certain data relevant to the individual Documents, including, where reasonable and possible, extracted and user created Metadata as specified herein.

"Metadata" means information about information or data about data, and includes without limitation (1) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and (2) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted or otherwise manipulated by a user of such system. Except as otherwise provided herein, this Order does not create a duty on a party to create Metadata that is not kept in the ordinary course (excluding production-related Metadata, such as Bates numbers) and reasonably captured and produced.

"Native File" means ESI in the file type for (or of) the application in which such ESI is normally created, viewed and/or modified.

"OCR" means the optical character recognition file which is created by software used in conjunction with a scanner that is capable of reading text-based Documents and making such Documents searchable using appropriate software.

3

4.   **PRESERVATION OF DISCOVERABLE INFORMATION:**

A party has a common law obligation to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody, or control.  Absent a showing of good cause by the requesting party, the parties shall not be required to modify, on a going-forward basis, the procedures used by them in the ordinary course of business to back up and archive data; provided, however, that the parties shall preserve the non-duplicative discoverable information currently in their possession, custody, or control.  Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

- Deleted, slack, fragmented, or other data only accessible by forensics.

- Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

- On-line access data such as temporary internet files, history, cache, cookies, and the like.

- Data in metadata fields that are frequently updated automatically, such as last-opened dates.

- Back-up data that are substantially duplicative of data that are more accessible elsewhere.

- Voice messages.

- Instant messages that are not ordinarily printed or maintained in a server dedicated to instant messaging.

- Electronic mail or pin-to-pin messages sent to or from mobile devices (e.g., iPhone and Blackberry devices), provided that a copy of such mail is routinely saved elsewhere.

- Other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere.

- Logs of calls made from mobile devices.

- Server, system or network logs.

- Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report.

- Data remaining from systems no longer in use that is unintelligible on the systems in use.

## 5.  THE COLLECTION AND CULLING OF ESI:

### A.      Named Custodians, Non-Custodial ESI, and ESI Search Methodology

Counsel for Plaintiff and Defendant will correspond regarding the selection of Named Custodians and centralized data sources (i.e., non-custodial ESI) from which they are collecting ESI for production in the above-captioned action (the "Action"). The parties will work in good faith to identify, discuss, agree upon and revise, if necessary, the Named Custodians and sources of non-custodial ESI to avoid an undue burden and retrieval of a large quantity of non-responsive ESI. The parties agree to limit the number of Named Custodians for each party to four (4), with the understanding that they will meet and confer if a larger number becomes necessary. By February 13, 2024, the parties will identify:

(1) The Named Custodians by name, title, their role in the instant dispute, and a description of the scope and subject matter of Custodial Documents attributed to each Named Custodian;

5

(2) A list of the Non-Custodial Data Sources that are most likely to contain non-duplicative discoverable Documents for preservation and production consideration; and

(3) Any issues relating to:

    (i)    Any ESI (by type, date, custodian, electronic system or other criteria) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(C)(i).

    (ii)    Production of information subject to privacy protections, including information that may need to be produced from outside of the United States and subject to foreign laws.

**B.**    **Collection of ESI**

Each party shall make a reasonable, good faith, proportional, and diligent effort to identify, preserve, and produce reasonably accessible and responsive (1) Custodial Documents from the Named Custodians and (2) ESI from the agreed-upon Non-Custodial Data Sources.

**C.**    **Other Methods to Streamline Culling of ESI**

Documents may be de-duplicated globally (i.e. across multiple custodians) provided that the producing party identifies the additional custodians in the Custodians All field specified in Attachment A. Duplicates shall be identified by industry standard hash values or other comparable automated process only. Any other methodology for identification of duplicates must be discussed with the receiving party and approved before implementation.

**6.  PRODUCTION FORMATS**

The parties shall produce Documents and ESI in a reasonably usable form. Except as otherwise provided herein (e.g., Section 8.C regarding Native Files), or as agreed hereafter

by the parties, such reasonably usable form shall be the single-page TIFF-image format with extracted or OCR text and the associated Metadata set out in Attachment A (to the extent available and reasonable to collect and produce). If particular Documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such Documents.

**A.    Production Media**

The production media for Document productions shall be by secure FTP link provided via email.  Each item of production media shall be labelled in a consistent and logical manner to inform the receiving party of its contents.

**B.    TIFFs**

All production images will be provided as black and white single page Group IV TIFFs of at least 300 dpi resolution (except for documents requiring a different resolution or page size); for production of color images, *see* Section 6.G.  Original Document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Hidden content, tracked changes or edits, comments, notes and other similar information viewable within the Native File shall also be imaged so that this information is captured on the produced image file.

**C.    Text Files**

Each Document or ESI item produced under this Order shall be accompanied by a text file. All text files shall be provided as a single Document level text file for each item, not one text file per page. Each text file shall be named using the Bates number of the first page of the corresponding production item. The full path of the text file must be provided in the Load File. Text files themselves should not be delivered in the Load File.

Paper or other non-ESI Documents will be accompanied by an OCR file. The parties will endeavor to generate accurate OCR and will utilize quality OCR processes and technology. OCR text files should indicate page breaks where possible.  ESI will be accompanied by extracted text taken from the ESI item itself. The parties agree not to degrade the searchability of text extracted from ESI or produced via OCR.

To the extent that a Document or ESI is redacted, the text file should not contain the text of the redacted portions.

### D.     Bates Numbering

All images must be assigned a Bates number that must always: (1) be unique across the entire production; (2) maintain a constant length (0- padded) across the entire production; and (3) be sequential within a given Document. Bates numbers should be a combination of an alpha prefix along with a number (e.g. ABC00000001). The number of digits in the numeric portion of the Bates number format should not change in subsequent productions.

Bates numbers should generally be assigned sequentially as Documents are processed. If a Bates number or set of Bates numbers is skipped in a production, the producing party will provide a slip sheet stating "Bates Skipped" or so note in a cover letter or production log accompanying the production.

The producing party will brand each TIFF image in the lower right-hand corner with its corresponding Bates number, using a consistent font type and size. The parties must use best efforts to apply Bates numbers so as not to obscure any part of the underlying image. If the placement in the lower right-hand corner will result in obscuring the underlying image,

the Bates number should be placed as near to that position as possible while using best efforts to preserve the underlying image.

### E.    Parent-Child Relationships

Parent-child relationships between Documents that have been maintained in the ordinary course of business should be preserved. For example, if a party is producing a document that has attachments, the attachments should be processed in order behind the document, except attachments withheld on privilege grounds, which will be indicated on the associated privilege log and the withheld attachment replaced with a slip sheet stating "Document Withheld for Privilege" or "Privileged."

### F.    Load Files

All production items will be provided with a Load File. Image Load Files should be provided in .opt format. Metadata load files should be provided in .dat format with Concordance delimiters. The Load File must reference each file (whether in TIFF or Native File format) in the corresponding production. Metadata for a given Metadata field shall be produced with uniform formatting across different Documents and productions to the extent practicable.

Load File names should contain the volume name of the production media. Additional descriptive information may be provided after the volume name. For example, both ABC001.dat or ABC00l_metadata.dat would be acceptable.

### G.    Color

Documents or ESI containing color need not be produced initially in color. However, if an original Document or ESI item is not fully legible when produced without color, or contains color markings or highlighting and it is necessary to see those markings or

highlighting in their original color to understand the meaning or content of the Document, then the producing party must produce it in color.  The producing party shall reproduce any Document in color if such color Document is available and upon receipt of a reasonable request by the receiving party.

### H.      Confidentiality Designations

If a particular Document or ESI item qualifies for confidential treatment pursuant to the terms of the protective order entered by the Court in this litigation, or has been redacted in accordance with applicable law or Court order, the appropriate confidentiality designation shall be shown both on the face of all TIFFs pertaining to such item/Document, and in the appropriate data field in the Load File.

### 7.  PRODUCTION OF PAPER DOCUMENTS

The parties agree that responsive paper (or other non-ESI) Documents will be scanned and produced electronically rather than in paper format. The form of production for scanned Documents shall be: (1) TIFF images, consistent with the specifications in Section 6.B; (2) the appropriate Load Files consistent with the specifications below; and (3) searchable OCR text of scanned Documents created by the producing party, consistent with the specifications in Section 6.C.

The following information (as further described in Attachment A) shall be produced in the Load File accompanying production of all paper (or other non-ESI) Documents: (1) BegBates, (2) EndBates, (3) BegAttach, (4) EndAttach, (5) PgCount, (6) Custodian, (7) SourceParty, (8) TextPath, (9) Confidentiality, (10) Redacted, (11) ProdVol, (12) DocType, and (13) FilePath.

8.   **PRODUCTION OF ESI**

A.      **Removal of System Files**

ESI productions may exclude certain file types that are highly unlikely to contain relevant data, this includes, but is not limited to de-NISTing using the industry standard list of files maintained in the National Software Reference Library by the National Institute of Standards & Technology. Other file types may be added to the list of excluded files by agreement of the parties.

B.      **Metadata Fields and Processing**

Attachment A sets forth the minimum Metadata fields that must be produced, but only to the extent that Metadata exists and can be reasonably produced. Except as otherwise set forth below, to the extent that Metadata does not exist, is not reasonably accessible or available, or would be unduly burdensome to collect, nothing in this Order shall require any party to extract, capture, collect, or produce such data.

The parties are not obligated to manually populate any of the fields in Attachment A for an ESI item if such fields cannot be extracted from the ESI item using an automated process, with the exception of the following fields: (1) BegBates, (2) EndBates, (3) BegAttach, (4) EndAttach, (5) PgCount, (6) Custodian, (7) SourceParty, (8) TextPath, (9) Confidentiality, (10) Redacted, (11) ProdVol, (12) DocType, and (13) FilePath. These fields should be populated regardless of whether the fields can be populated pursuant to an automated process.

C.      **Production of Native File Items**

The following items of ESI shall be produced in Native File format: spreadsheet-application files (e.g., MS Excel, Tab Separated Value (.tsv), Comma Separated Value

(.csv)), personal databases (e.g., MS Access), and multimedia audio/visual files such as voice and video recordings (e.g., .wav, .mpeg, and .avi).

In addition to producing the above file types in Native File format, the producing party shall produce a single-page TIFF slip sheet indicating that a Native File item was produced and its confidentiality designation. The corresponding Load File shall include the NativePath data field for each Native File that is produced. Any electronic file produced in Native File format shall be given a file name consisting of a unique Bates number, for example, "ABC00000002.XLS."

To the extent that a party intends to print out a Document produced in native format or use such Document at depositions, pleadings, trial, or for any other purpose where the identification of individual pages is necessary and practical, that party must either (1) sequentially number the individual pages of the Document and include the appropriate confidentiality designation on each page, or (2) append a cover sheet to the Document that includes the Bates number and the appropriate confidentiality designation.  For example, with respect to information produced in native format, designated "Highly Confidential - Attorneys' Eyes Only," and marked with the Bates number "ABC00000001," a party wishing to use a print out or create a PDF form of that Document may either (1) number the individual pages as "ABC00000001.1; ABC00000001.2; . . . ," and include the "Highly Confidential - Attorneys' Eyes Only" designation on each page, or (2) append a cover sheet to the print out or PDF that includes the "ABC00000001" Bates number and the "Highly Confidential - Attorneys' Eyes Only" designation.

Through the pendency of this case, the producing party shall exercise reasonable, good faith efforts to maintain all discoverable and/or preserved Native Files in a manner that does not materially alter or modify the files or their Metadata.

      **D.**     **Requests for Other Native Files**

 A receiving party may make a reasonable request for production of certain Documents in native format by providing (i) a list of the Bates numbers of Documents it requests to be produced in native format; and (ii) an explanation of the need for reviewing such Documents in native format, for the producing party's consideration.  If the parties are unable to agree to their production after meeting and conferring, the requesting party may move the Court for their production. The producing party shall bear the burden to show why such documents should not be re-produced in native format.

      **E.**     **Redaction**

The parties agree that where Documents or ESI need to be redacted, they shall be produced in TIFF with each redaction clearly indicated. For any redacted Document or ESI, any unaffected Metadata fields specified in Attachment A shall be provided, subject to the conditions set forth in Section 8.B. "Metadata Fields and Processing," *supra.*

If the items redacted and partially withheld from production are Excel-type spreadsheets, and the Native Files are withheld, the entire ESI item must be produced in TIFF format, including all unprivileged pages, hidden fields and other information that does not print when opened as last saved by the custodian or end-user. For Excel-type spreadsheets, this shall include, but is not limited to, hidden rows, columns, and worksheets, as well as all cell values, annotations and notes. The producing party shall also make reasonable efforts to ensure that any spreadsheets produced only as TIFF images are

formatted so as to be legible. For example, column widths should be formatted so that the numbers in the column will display rather than "##########."

If the items redacted and partially withheld from production are audio/visual files, the producing party shall provide the unredacted portions of the content. The parties shall meet and confer regarding the appropriate form for production of any types of ESI not specifically addressed herein.

### G.    Inaccessible and Unusable ESI

If a producing party asserts that certain ESI is inaccessible or otherwise unnecessary under the circumstances, or if the requesting party asserts that, following production, certain ESI is not reasonably usable, the parties shall meet and confer before presenting the issue to the Court for resolution.

### H.    Irretrievable ESI

If a party believes that responsive, unique ESI no longer exists in its original format, or is no longer retrievable, the parties shall meet and confer to attempt to resolve the issue expeditiously.

### I.    Compressed Files

Compression file types (i.e., .CAB, .GZ, .TAR, .Z, .ZIP) shall be decompressed in a reiterative manner resulting in individual folders and/or files in the lowest possible compression, for example to ensure that a zip within a zip is fully decompressed into individual non-zip files. Once decompressed into individual non-container files, the compressed container file does not need to be produced. Compressed items should be treated as compressed folders and not as compressed items.

9.  **PRIVILEGE LOG**

The parties agree to meet and confer in good faith regarding whether privilege logs are necessary, and if so, meet and confer in good faith regarding (1) the deadline for production of privilege logs after they have ascertained the volume of potentially responsive information, and (2) whether it is appropriate to log communications by category, rather than individually.  If the parties agree that it is appropriate to log communications individually, then for any Document withheld in its entirety or produced but redacted, the producing party will produce a privilege/redaction log identifying by Bates number, each document or portion(s) of each document over which the producing party is asserting privilege.

Privileged communications that post-date the filing of the Complaint need not be logged.

10. **MODIFICATION**

This Stipulated Order may be modified only by a written Stipulation of the parties or by the Court for good cause shown.

**IT IS SO STIPULATED,** through Counsel of Record.


Dated: 02/09/2024

_Wendy R. Stein_
_____
Counsel for Plaintiff

Dated: 02/09/2024

William N. Yau
_____
Counsel for Defendant


**IT IS ORDERED** that the forgoing Agreement is approved.

Dated: April 2, 2024

SO ORDERED.

_____
Hon. Victoria Reznik, U.S.M.J.

15

**Attachment A: Metadata Coding Fields**

The Metadata fields described below shall be populated for the indicated types of documents, in accordance with terms of the foregoing Order.

"Email" means any email message.[2]
"Edoc" means any item of ESI other than Email.
"All" means Email, Edocs, and scanned hard copy documents.

| Field Name | Document Type | Field Description |
|---|---|---|
| BegBates | All | Beginning Bates number of document |
| EndBates | All | Ending Bates number of document |
| BegAttach | All | First Bates number of the first document of the family |
| EndAttach | All | Last Bates number of the last document of the family |
| PgCount | All | Page count of document |
| Custodian | All | Custodian name |
| SourceParty | All | Party producing the document |
| TextPath | All | Path to the document level text file on production media |
| Confidentiality | All | Text of confidentiality designation, if any |
| Redacted | All | Whether all or any portion of the document is redacted |
| ProVol | All | Name of the production volume containing the document |
| DocType | All | Identifies type of document produced |
| FilePath | All | Path to the document level text file on production media |
| CustodiansAll | Email | All custodians who possessed a de-duplicated document |
| MD5 Hash | Edoc | The document's MD5 hash value |
| Size | Email | Size (in bytes) of the original document |
| Extension | Edoc | File extension of the document |
| FileName | Email | File name of the document |
| Title | Edoc | Any value in the Title field of the document properties |
| Subject | Email | Any value in the Subject field of the document properties |
| Author | Edoc | Any value of the Author field of the document properties |

---

[2] Email only fields have been included in this table in case the parties later agree in writing to produce email.  If emails are not produced by the parties, these fields will not apply to them, but will apply to non-parties who are producing email.

| Date\TimeCreated | Edoc | Date and Time the document was created |
|---|---|---|
| LastModDate\Time | Edoc | Date and Time the document was last modified |
| NativePath | Edoc | Path for Native File on production volume |
| NativeApp | Edoc | The application normally used to view the document |
| EmailSubject | Email | Subject line of email |
| AttachmentCount | Email | Number of documents attached to the email |
| From | Email | Sender of the email |
| To | Email | All recipients included on the "To" line of the email |
| CC | Email | All recipients included on the "CC" line of the email |
| BCC | Email | All recipients included on the "BCC" line of the email |
| ParentID | Email | Identifies ID of parent document if document family |
| AttachIDs | Email | Identifies the ID(s) of the children document(s) in family |
| Date\TimeSent | Email | Date and time email was sent |
| TimeSent | Email | Time email was sent |
| TimeReceived | Email | Time email was received |
| Date\TimeReceived | Email | Date and time email was received |