UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

Carvana, LLC,

                      Plaintiff,

        -against-

International Business Machines Corp.,

                      Defendant.
------------------------------------------------------------------X

23-cv-8616

**OPINION & ORDER**

**VICTORIA REZNIK, United States Magistrate Judge:**

Plaintiff Carvana, LLC, (hereinafter "Carvana") sued Defendant International Business Machines Corporation (hereinafter "IBM"), seeking a declaratory judgment of non-infringement for several of its patents. (ECF No. 1). IBM counterclaimed for patent infringement. (ECF No. 36 at 13).

Before the Court is the parties' dispute over whether IBM can seek a deposition of Carvana's in-house counsel, Ms. Jessica Wilson. (ECF No. 111). For the reasons explained below, Plaintiff's motion for a Protective Order to quash Ms. Wilson's deposition notice is **GRANTED in part and DENIED in part**.

## DISCUSSION[1]

Although obtaining "discovery from opposing counsel is disfavored," *In re Chevron Corp.,* 749 F. Supp. 2d 141, 159 (S.D.N.Y. 2010), "that the proposed deponent is a lawyer does not automatically insulate him or her from a deposition." *In re Subpoena Issued to Dennis Friedman,* 350 F.3d 65, 72 (2d Cir. 2003). Indeed, "the request to depose a party's attorney must be weighed by balancing, generally speaking, the necessity for such discovery in the circumstances of the case against its potential to oppress the adverse party and to burden the adversary process itself." *Madanes v. Madanes,* 199 F.R.D. 135, 151 (S.D.N.Y. 2001). To that end, the *Friedman* Court laid out the following factors to consider in assessing whether to permit the deposition of an opposing counsel: 1) the need to depose the lawyer; 2) the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation; 3) the risk of encountering privilege and work product issues, and; 4) the extent of discovery already conducted.

As to the first factor – the need to depose the lawyer – the threshold questions are (1) "whether the information sought may be obtained from another source," *Sec. & Exch. Comm'n v. Contrarian Press*, No. 16-CV-6964 (VSB), 2020 WL 7079484, at *4 (S.D.N.Y. Dec. 2, 2020), and (2) "the relevance of the information sought." *Dominion Res. Servs., Inc. v. Alstom Power, Inc.*, No. 3:16CV00544(JCH), 2017 WL 3228120, at *3 (D. Conn. July 31, 2017). Additionally, Courts look to whether the moving party has made "reasonable efforts to explore a reasonable

---

[1] Familiarity with the procedural background and facts are assumed.

number of these alternative sources and has not obtained anything nearly as particularized as what the primary [] lawyer could reasonably be expected to offer." Ca*lvin Klein Trademark Tr. v. Wachner*, 124 F. Supp. 2d 207, 211 (S.D.N.Y. 2000).

Between the parties' moving papers and the conference the Court held on September 13, 2024 (ECF No. 121), it is clear that IBM seeks to depose Ms. Wilson on: (1) pre-suit communications between the parties; (2) Carvana's awareness of the patents-in-suit, and; (3) Carvana's licensing policies and practices generally and with respect to prior licensing agreements. Although the Court's analysis differs for each topic, on balance the *Friedman* factors favor granting a limited deposition of Ms. Wilson on topics (1) and (3), as explained below.

### 1. The need to depose the lawyer (*Friedman* factor #1)

The first *Friedman* factor – the need to depose the lawyer – favors a limited deposition of Ms. Wilson on her pre-suit communications with IBM. Although many of the pre-suit communications are memorialized in emails, it is clear even from the face of them that there were several phone conversations between or among Ms. Wilson and IBM personnel. (ECF No. 113-1). And in Mr. McBride's deposition, he refers several times to statements made by Ms. Wilson during those conversations, the substance of which the parties appear to dispute. (*See* ECF No. 126-1 (McBride Tr. at 150-151, 166-167, 168)). Although Carvana asserts that the written communications speak for themselves, even Mr. McReynolds (Carvana's 30(b)(6) witness on the topic) acknowledged that he wouldn't know about anything that was said over the phone, nor was he prepared to do so. (*Id.* at 290:1-7). Thus, at this

3

point in the case, Ms. Wilson would be the best source of information about her phone conversations with IBM. Also, these conversations are undoubtedly relevant, as they may reveal – among other things – what information about the patents-at-issue was communicated between the parties and when.

As to Carvana's patent licensing practices with third parties, the need for Ms. Wilson's deposition only slightly favors a deposition. It appears that Carvana's 30(b)(6) witness had very limited knowledge about Carvana's negotiation and execution of prior licenses and related agreements. Mr. McReynolds could verify who was involved and the general circumstances surrounding the negotiations, but not much more. And he made clear that Ms. Wilson would be the most knowledgeable about this topic. As to general policies and practices, Mr. McReynolds did answer some limited questions but was vague on specifics. (ECF No. 126-2 (Tr. at 233-236)). By contrast, IBM's witness (Mr. McBride) offered more specifics about IBM's general policies and practices on a similar topic (ECF No. 126-1 (Tr. at 99-100; 104-105)), and offered more detail on at least some of the licensing negotiations he took part in. (*Id.* at Tr. at 115).[2] Thus, allowing a limited deposition of Ms. Wilson on Carvana's patent licensing policies and practices with third parties would put the parties on a more equal footing.

But the Court sees no need to depose Ms. Wilson about Carvana's awareness of the patents-in-suit – beyond her testimony about her communications with IBM

---

[2] IBM's witness did at times defer to attorneys or testify that he could not give legal interpretations. (ECF No. 126-1 (Tr. at 94; 58-59, 74)). Ms. Wilson is free to respond in kind to avoid divulging privileged information or work-product.

4

above. Carvana's 30(b)(6) witness testified sufficiently on this topic, and IBM has not pointed to any additional testimony Ms. Wilson could offer that would not be privileged. Indeed, Carvana's 30(b)(6) witness already identified the timing of Carvana's awareness of the patents-in-suit, and any further questions about Carvana's investigation would elicit privilege objections. Thus, a targeted interrogatory would serve as a reasonable alternative to elicit any additional relevant, non-privileged information on this issue.

### 2. The lawyer's role (*Friedman* factor #2)

The second *Friedman* factor evaluates the "lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation." *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 72 (2d Cir. 2003). Courts are particularly hesitant to allow depositions of opposing counsel in evaluating this factor because "even if limited to relevant and non-privileged information, [they] are likely to have a disruptive effect on the attorney-client relationship and on the litigation." *Sec. & Exch. Comm'n v. Contrarian Press*, No. 16-CV-6964 (VSB), 2020 WL 7079484, at *4 (S.D.N.Y. Dec. 2, 2020) (quoting *U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, No. 97CV06124(JGK)(THK), 2000 WL 1253262, at *2 (S.D.N.Y. Sept. 1, 2000)). Although courts seem to disfavor depositions of attorneys generally, there is a distinction between those providing legal services to a client before litigation and those serving as trial counsel. *See KOS Bldg. Grp., LLC*, 2020 WL 1989487, at *5 (determining that where an attorney is acting as a party's lawyer "weighs against allowing" the deposition); *Cf U.S. Fid. & Guar. Co. v.*

*Braspetro Oil Servs. Co.*, No. 97CIV.6124(JGK)(THK), 2000 WL 1253262, at *2 (S.D.N.Y. Sept. 1, 2000) (emphasizing that such considerations are most pronounced where the deposition targets trial counsel).

Here, Ms. Wilson's role in the sought-after discovery supports granting a limited deposition. As noted above, Ms. Wilson played a primary role in pre-suit communications with IBM, as well as Carvana's licensing practices with third parties. Although Ms. Wilson serves as Carvana's in-house counsel, she is not trial counsel. Thus, the Court finds that allowing a limited deposition would not disrupt the relationship between Carvana and its trial counsel, which is where such considerations are most pronounced. *U.S. Fid. & Guar. Co.*, 2000 WL 1253262, at *2; *See also Chase Manhattan Bank, N.A. v. T & N plc*, 156 F.R.D. 82, 84 (S.D.N.Y. 1994) (finding that the magistrate judge acted within their discretion in permitting a deposition of a non-trial counsel, who may have exercised business and legal authority).

### 3. The risk of encountering privilege and work-product issues (*Friedman* factor #3)

This third factor counsels a split approach to the deposition, as there is a non-negligible "risk of encountering privilege and work-product issues" for some topics, but a negligible risk for others. *Friedman*, 350 F.3d at 72. "Because every *Friedman* case entails at least some risk of encountering such issues," analyzing this factor requires "a sensitive consideration of the extent to which substantial privilege issues are raised." *Sec. & Exch. Comm'n v. Contrarian Press*, No. 16-CV-6964

6

(VSB), 2020 WL 7079484, at *5 (S.D.N.Y. Dec. 2, 2020) (quoting *In re Chevron Corp.*, 749 F. Supp. 2d 141, 164 (S.D.N.Y. 2010)).

As mentioned above, there is a negligible risk of encountering privileged material in deposing Ms. Wilson about her pre-suit communications with IBM. IBM was a party to those conversations after all. Thus, so long as IBM is limited to deposing Ms. Wilson about conversations it took part in, there is no risk of encountering privilege and work-product issues.

That risk is slightly higher when it comes to Carvana's licensing practices with third parties. Arguably, Ms. Wilson's negotiations with third parties could veer into her legal analysis and advice about Carvana's licensing agreements. Indeed, IBM's witness on a similar topic did at times defer to attorneys or testify that he could not give legal interpretations. (ECF No. 126 (Tr. at 94; 58-59, 74)). But, on balance, Ms. Wilson could likely provide the same level of detail about Carvana's licensing practices as provided by IBM's witness without divulging privileged information or work-product.

But the same is not true for Carvana's awareness of the patents-in-suit. Carvana's 30(b)(6) witness already testified sufficiently on this topic. And any additional information Ms. Wilson could provide about Carvana's investigation would likely be privileged in any case. Thus, of the three topics on which IBM seeks to depose Ms. Wilson, two weigh in favor of a deposition while one does not.

7

### 4. The extent of discovery already conducted (*Friedman* factor #4)

Lastly, the fourth factor favors allowing the deposition. "Courts are often less likely to grant discovery against opposing counsel where the parties have already engaged in significant discovery." *Sec. & Exch. Comm'n v. Contrarian Press*, No. 16-CV-6964 (VSB), 2020 WL 7079484, at *5 (S.D.N.Y. Dec. 2, 2020); *See also KOS Bldg. Grp., LLC v. R.S. Granoff Architects, P.C.*, No. 19CV2918 (PMH)(LMS), 2020 WL 1989487, at *6 (S.D.N.Y. Apr. 24, 2020) (finding that the "late stage of discovery" weighed against allowing the deposition). Here, while the parties' fact discovery deadline has passed, there is still much discovery to be done. The parties have yet to engage in expert discovery or conduct their *Markman* hearing on claim construction. And both parties waited until the end of fact discovery to conduct 30(b)(6) depositions on a whole host of issues, which inevitably meant that any post-deposition disputes would extend past fact discovery. Because the parties are in this midway stage of discovery, this factor weighs slightly in favor of allowing the deposition.

* * *

Balancing all the factors above favors a limited deposition of Ms. Wilson on a limited set of topics for a short period of time (no more than 3 hours on the record).

First, on the issue of pre-suit communications, Carvana must produce Ms. Wilson for a limited deposition to discuss her side of the conversations with IBM or be precluded from offering testimony at trial that goes beyond the written

8

communications themselves. To be clear, any deposition would be limited to Ms. Wilson's communications with IBM and nothing more.

Similarly, the Court will allow the limited deposition of Ms. Wilson as mentioned above to include questions about Carvana's general patent policies and practices and the non-privileged aspects of her negotiations and execution of Carvana's prior patent licensing agreements, similar in detail to the testimony provided by IBM's witness.

But to the extent IBM has additional questions about Carvana's awareness of the patents-in-suit that would not elicit privilege objections, those can be addressed with an interrogatory request.

## CONCLUSION

For the reasons above, Plaintiff's motion for a Protective Order to quash Ms. Wilson's deposition notice is **GRANTED in part and DENIED in part**.

**SO ORDERED.**

DATED:   White Plains, New York
         November 13, 2024

_____
VICTORIA REZNIK
United States Magistrate Judge